AEROSOL RESEARCH COMPANY,
Plaintiff-Appellee,

v.

SCOVILL MANUFACTURING COMPANY (A. SCHRADER'S SON DIVISION), Defendant-Appellant.

No. 14251.

United States Court of Appeals
Seventh Circuit.

July 14, 1964.

Will Freeman, Chicago, Ill., Howard J. Churchill, New York City, Bair, Freeman & Molinare, Chicago, Ill., Sheldon W. Witcoff, Chicago, Ill., of counsel, for defendant-appellant.

Herman Gordon, Dressler, Goldsmith, Clement, Gordon & Ladd, Chicago, Ill., Jack Shore, Chicago, Ill., of counsel, for plaintiff-appellee.

## REVISED OPINION ON REHEARING

Before SCHNACKENBERG, CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

Aerosol Research Company, plaintiff-appellee, assignee of St. Germain Patent No. 2,881,808 relating to an aerosol valve brought suit in the District Court charging Scovill Manufacturing Company (A. Schrader's Son Division), defendant-appellant, with infringement of the patent and with unfair competition in the manufacture and sale of certain spray tips for aerosol valves. The defendant asserted invalidity of the patent, denied infringement, and denied plaintiff's allegations concerning unfair competition. Following trial of the issues the District Court entered findings of fact and conclusions of law which it incorporated by reference in the judgment order from which the defendant prosecutes this appeal. The court held Claims 2 and 3 of the patent valid and infringed by certain aerosol valves made and sold by the defendant. The court also held defendant's activities in connection with the manufacture and sale of spray tips similar to the plaintiff's to constitute unfair competition. The judgment order granted injunctive relief; ordered the ascertainment of plaintiff's damages by a designated special master, and directed that the damages be trebled; awarded plaintiff attorneys' fees and expenses of litigation, to be determined by the master; and directed defendant to relinquish to the plaintiff all dies, molds, fixtures and special tools which it owns or controls for the manufacture of the infringing valves.

The main issues presented by the defendant's contentions on appeal are:

(1) Whether the District Court's findings and conclusions that Claims 2 and 3 of the patent are valid, and are infringed by the accused devices, are clearly erroneous.

(2) Whether the scope of the injunctive relief granted is too broad.

(3) Whether the court erred in directing the defendant to relinquish its dies, molds, etc. to the plaintiff.

(4) Whether the court's determination that defendant is guilty of unfair competition represents the application of correct legal criteria.

(5) Whether the court erred in awarding treble damages and attorneys' fees and expenses.

Insofar as the detailed findings of the court concern factual issues such as the use made of prior art, the nature of the improvement made over prior art, and the operational functions and characteristics of the patented structure and the accused devices, Rule 52(a) of the Federal Rules of Civil Procedure (28 U.S.C.A.) applies. The court heard the testimony of expert witnesses and observed the demonstrations made in connection with these matters. The scope of our review of such findings is therefore limited to a determination of whether or not they are "clearly erroneous". Armour & Co. v. Wilson & Co., 7 Cir., 274 F.2d 143, 156; Minnesota Mining and Mfg. Co. v. Technical Tape Corp., 7 Cir., 309 F.2d 55, 57. If they find support in the evidence we are bound thereby and there remains but the question of whether or not the court applied the correct legal criteria in reaching the ultimate conclusions it did.

The record discloses that aerosol valves of the types here involved are small, relatively inexpensive devices that are secured to the top of a container in which there is material to be dispensed that is maintained under pressure within the container by a substance known as a propellant. Typical of such products are insecticides, deodorants, paints, hair sprays and shaving lathers. The valve operates to permit the user to dispense the material from the container through the valve, usually by applying finger pressure to the button or spray tip attached to the top of the valve, either by pushing down or pushing laterally to tilt the tip.

Some valves are operable by both methods. Another distinction arises from the method used to place the propellant in the container. Most often the propellant is a composition which is a liquefiable gas which is partly liquid and partly gaseous in its normal state in the aerosol container. One method for the insertion of this type of propellant is known as "cold filling". This method presents difficulties and is expensive because it requires substantially all of the equipment employed to be thermally insulated and refrigerated. Disadvantages of cold filling are overcome by the method known as "pressure filling" which is used by most high-production manufacturers of aerosol dispensed products and has been widely accepted for several years. The procedure for pressure filling permits operating at room temperature and is employed by first measuring the quantity of material to be dispensed into the container, then sealing the valve onto the container and forcibly injecting the propellant into the container through the valve assembly by sealing an "adaptor" of the filling mechanism onto or over the valve and forcing the propellant through the adaptor and through the valve into the container.

All valves can be used for cold filling, since that method permits the valve to be sealed onto the container after the container has been filled. Pressure filling, however, requires the use of valves which permit the propellant to be forced through the valve in a direction opposite to the normal discharge or dispensing direction of flow. The discharge orifices are normally small, varying from .013″ to .040″ and where the propellant flow in pressure filling is restricted to these orifices the rate of propellant flow is reduced and the operation slowed.

The structure of the patent in suit consists of five primary parts. These are a valve housing; a rubber gasket; a

one-piece valve body with a tubular stem; a spring; and a mounting cup. Additional parts are a dip tube extending downwardly into the container and the spray tip affixed to the upper portion of the stem. The dip tube is affixed to the open lower end of the valve housing or shell as a pipe to conduct the material to be dispensed into the valve. The housing or shell is secured in the pedestal of a mounting cup with a gasket of uniform thickness between the upper edge of the housing and the lower face of the top of the pedestal. The mounting cup also serves as the means by which the valve is mounted on the container and sealed to the open top of the container. A one-piece valve body with a tubular stem which is tiltable within the housing and which has an annular groove therein below the bottom of the gasket and an orifice forming a communication path or flow path between the groove space and the hollow interior of the stem, is normally pressed into sealing engagement with the lower surface of the gasket by a spring. The hollow stem portion projects through concentric holes in the gasket and the pedestal of the mounting cup. The button or spray tip is affixed to the stem externally of the valve, usually by a friction fit. The spray tip has a passage in it that will conduct the aerosol material to be dispensed to a terminal orifice or spray hole through which the material moves out into the air. The size and shape of the hole determine the pattern of the spray and the particle size of the material as it is sprayed. Since all of the parts are concentric, they are normally aligned with the opening at the top of the container.

Findings of the District Court, supported by substantial evidence, make it clear that the novel feature or element of the patent in suit which endows the combination claimed in Claims 2 and 3 [1] with

1. Claims 2 and 3 of St. Germain Patent No. 2,881,808 read:

"2. An aerosol valve comprising a valve housing having an open top and an opening in its bottom, an annular sealing gasket of uniform thickness positioned on the

top edge of said valve housing, a solid, one-piece valve body positioned in said valve housing, the upper surface of said valve body seating against the underside of said annular sealing gasket, a tubular valve stem of uniform cross sec-

the quality of invention, which serves to distinguish those claims over the prior art cited and relied upon by the defendant,[2] and which enables the structure claimed to achieve the desirable characteristic of being pressure fillable at a high rate of propellant flow while utilizing an inexpensive one-piece valve body and stem and retaining operability by both push-down and lateral or tilt activation of the spray tip, is the annular groove in the upper surface of the valve body dimensioned to provide clearance for the inner edge of the sealing gasket upon downward deflection of such inner edge by external gas pressure. This feature furnishes a flow path for the propellant during pressure filling apart from or in addition to the discharge orifice in the one-piece valve body and stem.

 None of the cited prior art discloses the above annular groove element or its equivalent into which the inner edge of the sealing gasket can be deflected or moved for pressure filling of the container through the valve assembly although all other elements of Claims 2 and 3 of the St. Germain Patent appear, singly or in various combinations, in the prior art. The valve of the patent in suit is a new combination resulting in an improved construction which accomplishes a new result and which is more efficient than the prior art devices. Such a construction is patentable. Copease Manufacturing Co., Inc. v. American Photocopy Equipment Co., 7 Cir., 298 F.2d 772, 781; Anderson Company v. Sears, Roebuck and Co., 7 Cir., 265 F.2d 755, 762–763.

 The record discloses that at the time of the trial the patent in suit had not resulted in a commercial structure produced by the plaintiff. Plaintiff's president testified that "[n]ot until

---

tion extending from said valve body upwardly through said annular sealing gasket, said gasket tightly hugging the outer surface of said valve stem, *the upper surface of said valve body having an annular groove dimensioned to provide clearance for the inner edge of said sealing gasket upon downward deflection of the inner edge of said sealing gasket whereby* said valve body is vertically displaceable in a downward direction by external gas pressure exerted against the inner edge of said sealing gasket externally of said valve stem, and an internal orifice extending through said valve body and communicated with the interior of said tubular valve stem.

"3. An aerosol valve for use with a container having an opening in its top, a valve housing having an open top aligned with the opening in the top of the container and an opening in its bottom communicating with the interior of the container, a sealing gasket extending across the open top of said valve housing, a valve body positioned in said housing and having its top surface seated against the underside of said gasket, the top surface of said valve body being provided with an annular groove, a tubular valve stem of uniform cross section projecting upwardly from the upper surface of said valve body through said sealing gasket, the open top of said housing, and the opening in said container, *said annular*

*groove being dimensioned to provide clearance for the inner edge of said sealing gasket upon downward deflection of the inner edge of said sealing gasket whereby* said valve body is displaceable from said sealing gasket by external gas pressure exerted against the inner edge of said sealing gasket externally of said valve stem to permit filling of said container, and an internal orifice extending through said valve body between said tubular valve stem and said annular groove, said valve body being displaceable from said gasket to expose a portion of said groove by vertical or lateral pressure against said valve stem, whereby the contents of said container are forced by pressure of said contents through the opening in the bottom of said housing, the internal orifice, and the tubular valve stem, into the atmosphere."

The italicized language was added by amendment after the Patent Office examiner had rejected the claims as unpatentable over Green Patent No. 2,709,-111.

2. The prior art patents cited and relied upon by defendant are Benson Patent No. 2,570,909; Loven Patent No. 2,582,262; Abplanalp Patent No. 2,631,814; Green Patent No. 2,709,111; and Green Patent No. 2,731,298. The first four are file wrapper references.

just recently" had the orifice been put in the valve body on a commercial basis; that plaintiff had been unable to find a moldmaker willing to undertake the job of putting this internal metering orifice in automatically in the molding process. And drilling the orifice had not produced acceptable tolerances. But the fact that plaintiff had not put the patent into commercial use does not deprive it of validity. We are not impressed by the defendant's contention that it is a mere "paper patent". Cf. Universal Oil Products Co. v. Globe Oil & Refining Co., 7 Cir., 137 F.2d 3, 7; Coltman v. Colgate-Palmolive-Peet Co., 7 Cir., 104 F.2d 508, 511. Lack of commercial success does not of itself establish lack of invention or preclude enforcement of a patent. Edward Valves Inc. v. Cameron Iron Works, Inc., 5 Cir., 286 F.2d 933, 939. And, the defendant's commercialization of its 60,000 series and S-62 valves which incorporate an annular recess and gasket deflection relationship attests to the useful improvement contributed to the industry by the novel element of the plaintiff's patent combination.

 The annular groove accommodating the downward flexing of the inner edge of the sealing gasket to provide a flow path for the introduction of the propellant by pressure filling is clearly portrayed in the patent drawings and the specifications describe the functional relationship of these parts for the purpose of pressure filling. We therefore find no merit in the defendant's contention that the patent is invalidated for the lack of a supplemental oath of the inventor to support the amendments made to Claims 2 and 3 to include a reference to the annular groove being dimensioned to provide clearance for the downward flexing of the inner edge of the gasket. The amendments did not constitute new matter. And they narrowed the claims. General Electric Co. v. Morgan-Gardner Electric Co., 7 Cir., 168 F. 52, 57; Cf. Helms Products, Inc. v. Lake Shore Manufacturing Company, Inc., 7 Cir., 227 F. 2d 677. 35 U.S.C.A. § 132 did not preclude the amendments nor did Rule 67 of the Patent Office Rules (37 C.F.R. § 1.67) require a supplemental oath to support the amendments which merely made clear something already substantially embraced in the claims. And, in this connection the expertise of the Patent Office inherent in its acceptance of the amendments without a supplemental oath is entitled to weight. Helms Products, Inc. v. Lake Shore Manufacturing Company, Inc., supra.

 In the argument submitted to the Patent Office by St. Germain's attorney it was represented in distinguishing Claim 2 from Green Patent No. 2,709,111 that the spray tip of the Green device was not removable from the stem and that this precluded the application of external gas pressure to the inner edge of the sealing gasket. The Green specifications do disclose that the button or spray tip is removable so as to permit pressure filling through the discharge orifice in the stem. But this mistake in the analysis of the prior art disclosed by Green did not, as defendant contends, constitute such a misrepresentation as to require invalidation of the St. Germain patent. The representation that the Green device would not pressure fill around the gasket inner edge was essentially correct and the mistake was not of a material nature. It constituted neither fraud nor inequitable conduct invalidating the patent.

 The District Court's findings and conclusions with respect to infringement by defendant in so far as its 60,000 series and S-62 valves are concerned are amply supported by the record. Both from the disclosures of exhibits and the testimony of expert witnesses it is apparent that these accused valves are identical with the structure and functional relationships of Claims 2 and 3 of the patent in suit except in minor, inconsequential and immaterial respects. These valves utilize the same combination of primary parts and an annular recess or space is provided in the upper part of the valve body where its peripheral edge seals against the underside of the gasket into which groove or recess the inner edge of the sealing

gasket can deflect or move to permit pressure filling around the inner edge of the gasket. Instead of a slanting orifice from the hollow lower part of the valve body leading to the annular space or groove in the upper portion of the valve body, as is portrayed in the drawings of the St. Germain patent, the devices employ a horizontal orifice in that portion of the tubular stem of the one-piece valve body which extends below the lower surface of the gasket, which orifice opens into the annular recess provided in the upper portion of the valve body. The recess and the communicating orifice of these accused devices are in all respects the equivalents of the annular groove and communicating slanting orifice of the structure of plaintiff's patent. They perform the same functions in the same manner as do the groove and orifice of the St. Germain patent.

The record discloses that subsequent to the commencement of the suit the defendant developed a Model S-63 valve and it was ready for sale at the time of the suit. A magazine advertisement admitted in evidence indicates that the S-63 valve is pressure-fillable around the valve seal at high speed but the record does not reveal whether the S-63 valve utilizes the combination of the patent in suit to achieve that result. In view of this the District Court should not have made an adjudication as to whether the S-63 model is an infringing device. But under the circumstances it would have been proper to direct the master, in connection with the accounting as to damages ordered by the court, to make a determination of the question as to whether or not the S-63 valve infringes the patent. Cf. Union Oil Co. of California v. American Bitumuls Co., 9 Cir., 109 F.2d 140, 147; A. B. Dick Co. v. Marr, (D.C.S.D.N.Y. 1942) 48 F.Supp. 775, 778, aff'd 2 Cir., 155 F.2d 923, vacated on other grounds, 329 U.S. 680, 67 S.Ct. 188, 91 L.Ed. 599. On remand of this case the District Court may either receive evidence and determine the issue as to whether the S-63 valve infringes or direct the master so to do.

■ The spray tips manufactured and sold by plaintiff are not patented devices. In view of the rationale of the recent holdings of the Supreme Court of the United States in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669, the record in this case cannot be deemed sufficient to support the District Court's conclusion that unfair competition on the part of the defendant is established. There is no evidence that defendant "palmed off" its spray tips as the plaintiff's—nor is there evidence of any intent or attempt to deceive or mislead customers as to their origin.

■ The judgment order of the District Court enjoins the defendant from making, using or selling certain of its aerosol valves, designated by series or model numbers, without a license from the owner of the St. Germain patent, and from otherwise infringing that patent. It further enjoins the defendant from making, using or selling, without such a license, "an aerosol valve operable to discharge by tilt action and capable of being pressure filled, and in which the valve has a one-piece valve body and stem". This latter portion of the injunctive relief granted is clearly unwarranted. It is beyond the scope of the protection afforded by St. Germain Patent No. 2,881,808. Tilt action operation, pressure filling, and one-piece valve body and stem construction are all old in the prior art—and a mere combination of those features does not infringe the narrower claims of St. Germain which endow the combination of such patent with the quality of invention. Plaintiff's patent is a narrow one. It is to be confined to the combination disclosed and claimed. The court erred in so extending the injunctive relief granted.

■ We have examined the authorities cited by plaintiff but find nothing in any of them which support that portion of the judgment order which directs the defendant to relinquish its dies, molds, etc. to the plaintiff. There is no basis

in law for decreeing such a forfeiture and confiscation of defendant's property—much less for awarding it to the plaintiff. The court erred in including such direction in its judgment order.

We find no substantial support in the record for the court's direction that the plaintiff's damages for infringement be trebled. The record discloses that defendant's accused devices [3] were designed, produced, tested for marketing, and sent out for customer evaluation prior to the issuance of the St. Germain patent and without knowledge of the application therefor—or of the work done by St. Germain in developing the patented structure. That defendant questioned the validity of the patent does not constitute wilful infringement. The dispute was bona fide and we find nothing in the record which in our judgment affords a basis for a finding of bad faith, fraud or other unconscionable conduct on the part of the defendant.

Apart from the fact that plaintiff is unable to sustain the judgment for damages and for injunctive relief based on what the court found to constitute unfair competition—and any award of attorneys' fees and expenses for that portion of the litigation must therefore be rejected—we are further of the opinion that the record does not warrant a finding that this is an "exceptional" case within the meaning and purview of 35 U.S.C.A. § 285 so as to authorize an award of attorneys' fees and expenses. The court's finding that the infringement was wanton and in reckless and deliberate disregard for the rights of the plaintiff is not supported by substantial evidence. It may well be that the evidence supporting the finding of deliberate copying of the plaintiff's unpatented spray tip, which the defendant had a right to do (Sears, Roebuck & Co. v. Stiffel Company and Compco Corp. v. Day-Brite Lighting, Inc., supra), was relied upon by the trial judge in this connection. Plaintiff in its argument to this Court urges that this copying, now abandoned as a basis for an unfair competition holding, be coupled with other factors it cites in support of the "wanton and wilful" infringement finding. We perceive no merit to such an approach.

We have considered the basic contested issues presented by the defendant's appeal but we have not deemed it necessary to comment in detail on all of the arguments advanced by the parties in support of their respective positions nor to expand this opinion by analysis of the cases cited in connection with their contentions. We have, however, in arriving at the disposition we make of the case, considered all of the arguments advanced and the authorities relied upon in support thereof.

For the reasons we have set forth the judgment order of the District Court is reversed in so far as it includes (1) an adjudication that defendant is guilty of unfair competition and awards of damages, injunctive relief, attorneys' fees and expenses for unfair competition; (2) injunctive relief beyond the scope of the claims of the patent, as herein indicated; (3) a direction that the damages ascertained for infringement be trebled; (4) awards of attorneys' fees and expenses; and (5) a direction that defendant surrender dies, molds, fixtures and special tools to the plaintiff; and (6) an adjudication that defendant's S-63 valve is an infringing device, and its production, use or sale without a license from the patent owner is restrained. In all other respects the judgment order is affirmed.

The cause is remanded to the District Court with directions to vacate the judgment order appealed from and to enter a judgment order consistent with the views expressed in this opinion.

Neither plaintiff nor defendant is allowed costs on this appeal.

Affirmed in part, reversed in part, and remanded with directions.

---

3. With the exception of valve model S-63.