GRUENDLER CRUSHER & PULVERIZER CO., Plaintiff,

v.

WILLIAMS PATENT CRUSHER & PULVERIZER CO. and Robert M. Williams, Defendants.

No. 76–1201C(A).

United States District Court, E. D. Missouri, E. D.

Aug. 29, 1980.

John D. Pope, III, St. Louis, Mo., for plaintiff.

Frederick M. Woodruff, Gravely, Lieder & Woodruff, Hugo M. Walther, Thompson, Walther, Shewmaker & Gaebe, St. Louis, Mo., for defendants.

## MEMORANDUM OPINION

HARPER, District Judge.

Plaintiff brought this action against the defendants in three counts. In Count I plaintiff seeks a declaratory judgment that Patent 3,667,694 (hereinafter 694) and Pat-

ent 3,637,145 (hereinafter 145) issued to defendant, Robert Williams, and assigned to the defendant corporation of which he is president, Williams Patent Crusher and Pulverizer Company (hereinafter Williams Company), are invalid under 35 U.S.C. §§ 101, 102 and 103 and, if found to be valid, are not infringed by plaintiff's rival machine. In Count II plaintiff alleges that the defendants have sought to secure a monopoly and have sought to restrain competition in the business of manufacturing and selling refuse shredder apparatus contrary to 15 U.S.C. §§ 1 and 2. In Count III plaintiff alleges that Patents 145 and 694 were obtained by misleading and withholding information from the United States Patent Office with the intent to unfairly compete in the marketplace and to secure a monopoly. In addition plaintiff prays that the Court order defendants not to institute any action based on Patents 145 and 694 against plaintiff or its customers in any other jurisdiction and that costs and reasonable attorney's fees be awarded to plaintiff.

The defendant Williams Company counterclaimed, seeking a judgment that Patents 145 and 694 were valid and that they were infringed by plaintiff's machine. Defendant Williams Company also seeks an injunction against plaintiff's continued infringement of Patents 145 and 694. Defendants further seek to be compensated for the infringement of said patents and for costs and reasonable attorneys' fees.

On September 15, 1977, defendant Williams Company executed, pursuant to 35 U.S.C. § 253, a disclaimer as to all claims pertaining to Patent 145. In an order denying plaintiff's motion for partial summary judgment the Court ruled that said disclaimer rendered the issue of Patent 145 moot.

Jurisdiction is proper pursuant to 28 U.S.C. §§ 1337, 1338 and 2201 and 15 U.S.C. § 15.

The pleadings, credible evidence and exhibits disclose that plaintiff and the defendant corporation are duly organized and existing under Missouri law and they compete in the manufacture of crushing and shredding machines designed to reduce bulky and heavy materials such as municipal refuse, so that the refuse can be used in land fills or otherwise conveniently disposed of.

Defendant Williams was granted Patent 694 on his reversible hammer mill shredder on June 6, 1972.

In August of 1974, the town of North Hempstead, New York, issued a competitive bid proposal and specifications for a municipal refuse shredder. Plaintiff requested a copy of the specifications on August 19, 1974. There were three alternative specifications, A, B and C, each describing a particular type of refuse shredder and naming the company or companies which manufactured that type of shredder. Specifications A and B named the defendant Williams Company. Specification C named five companies, including the plaintiff. Plaintiff bid on Specification A rather than C and was informed that its bid was successful on October 22, 1974. On November 18, 1974, the Williams Company, not knowing that plaintiff had successfully bid on Specification A, sent to plaintiff drawings and specifications of Patent 694 and asked plaintiff not to infringe Patent 694 during the course of its dealings with North Hempstead.

Defendant Williams Company later discovered that the shredder which plaintiff was planning to build for North Hempstead was very similar to Patent 694. They wrote to plaintiff on October 21, 1976, and warned plaintiff that in all probability its design was infringing Patent 694. The defendant Williams Company also notified North Hempstead by letter that it was participating in the infringement by being a customer of the plaintiff and that it must negotiate with the defendant company for the right to buy the plaintiff's shredder.

The Patent 694 reversible hammer mill shredder has a large, tall feed stack designed to accept bulky material for crushing. Incoming material falls through the feed stack into the crushing chamber, where it is fragmented by whirling hammer rotors. Material that is not adequately reduced by its first encounter with the hammers is often thrown back up into the feed

stack where it strikes the domed top of Patent 694. The feed stack is shaped so that the material will reduce its velocity as it strikes various places on the dome and stack walls and will be directed to fall back into the rotors, pursuing a path that will bring the still–speeding material into contact with incoming objects, causing further shredding by fracturing and thus relieving the hammers of some of their work. Breaker bars are located in the crushing chamber and are positioned so that they can direct objects which strike them back into the feed stack. The breaker bars are connected by shafts to thrust heads, and the thrust heads are connected to hydraulic cylinders. The hydraulic cylinders act as shock absorbers for the breaker bars so that the breaker bars will yield slightly on impact of hard–to–crush or oversized material passing between the hammers and the breaker bars. Shims are used to control inward movement of the breaker bars. As the hammers and breaker bars are worn thin by impact with the material being shredded, shims may be removed to position the breaker bars closer to the hammers so that large pieces will not pass uncrushed between them. The breaker bars on the opposite side from the direction of hammer rotation are kept in retracted position by means of the shims.

All of the parts and many of the features of Patent 694 have been embodied in previous patents. However, some of the parts serve new functions and no machine previously built has had this particular combination of parts. Among the special features of Patent 694 are:

1. A dome top designed to reduce wear of the shredder by not allowing hard material thrown upward by the rotating hammers to strike the top of the machine at a ninety–degree angle and designed to direct the material back to the hammers.

2. A pressure fluid system to absorb the shock of objects striking the breaker bars, to yield upon impact of hard objects, and to position the breaker bars in such a manner that the objects are directed into the feed stack so that the objects strike the stack's sides and top at a greater than ninety–degree angle.

3. Shims to position the breaker bars and to prevent the breaker bars from moving beyond a predetermined position toward the hammer path.

4. A chain curtain across the opening of the feed stack inlet to keep material thrown into the feed stack from escaping through the inlet opening.

5. A receiving surface for incoming material, adjacent to the dome top, to direct the incoming material into the path of material thrown into the stack by the rotating hammers, thus relieving the hammers of some of the work of reduction.

It is the totality of the elements which is to be viewed as in a combination patent. Though no single element in the combination is new, the elements put together may deserve a patent since the combination as a whole is new. *Aro Manufacturing Co., Inc. v. Convertible Top Replacement Co., Inc.*, 365 U.S. 336, 344, 81 S.Ct. 599, 603, 5 L.Ed.2d 592 (1961).

Patents enjoy a strong presumption of validity under 35 U.S.C. § 282. However, the presumption is weakened, if not completely destroyed, by proof of pertinent prior non–considered art. *Ralston Purina Co. v. General Foods Corp.*, 442 F.2d 389, 390 (8th Cir. 1971).

Plaintiff asserts that defendant Williams should have disclosed the Gondard Patent 3,082,963 (hereinafter 963) to the Patent Office and that William's failure to do so destroys the presumption of validity of Patent 694. Although 693 is the only patent in evidence other than 694 which contemplates that material will be thrown back into a tall feed stack by hammers, 963 was designed to reduce only soft material. It has a tramp metal trap to get rid of any hard material, such as tin cans. Some of the soft material strikes the walls of 963 glancingly instead of at a ninety–degree angle, but there are no breaker bars and no recycling of the material. The material is moved by air currents and centrifugal force. Patent 963 is no more relevant than the other patents

considered by the Patent Office, is in many ways cumulative, and would have added little or nothing to the patent search. Therefore, Patent 963 is not more pertinent than the prior art considered by the Patent Office, and the presumption of validity of Patent 694 remains intact.

■ That Williams did not disclose his pending application for Patent 145 does not weaken the presumption of validity for Patent 694. To avoid double patenting the later patent must go beyond the claims of the co–pending patent. *Briggs v. M. & J. Diesel Locomotive Filter Corp.*, 342 F.2d 573, 577 (7th Cir. 1965). 694 meets this requirement because it has a dome top instead of the traditional flat top of 145, and the breakers of 694, for the first time, are used to control the direction of the hard–to–crush material.

35 U.S.C. § 101 requires that a patent be useful in order to be valid. Patent 694 has great utility since it can shred industrial or municipal refuse with greater durability than its predecessors.

■ 35 U.S.C. § 102(a) and (b) require a patent to be novel. A patent is not novel under § 102(a) if the item was "anticipated," that is, known or used, patented, or described in a printed publication prior to the invention thereof by the applicant for the patent.

In *Greening Nursery Co. v. J and R Tool & Manufacturing Co.*, 376 F.2d 738, 740, the Eighth Circuit Court of Appeals stated:

> "The test for determining anticipation is whether the prior art discloses all the elements of the claimed combinations, or their mechanical equivalents, functioning in substantially the same way, to produce the same result."

■ An invention that is more efficient than its predecessors cannot be anticipated piecemeal by a showing that the various elements of the patent are old. *Reese v. Elkhart Welding & Boiler Works, Inc.*, 447 F.2d 517 (7th Cir. 1971).

Plaintiff presented a plethora of prior art references, including the Gondard Patent 963. After careful consideration of the prior art cited, the Court finds that the art does not anticipate, singly or in combination, the special features of Patent 694.

■ A patent is not novel under § 102(b) if the invention was patented, described in a printed publication, in public use, or on sale, more than one year prior to the date of the application for patent in the United States.

Williams submitted his application for Patent 694 on July 17, 1970. In May of 1969, Joseph Smith & Sons, Inc., had received a reversible hammer mill shredder from defendant Williams Company. Though this machine was in use more than one year prior to Williams' application for Patent 694, the Smith machine differed substantially from Patent 694. The Smith machine had a flat rather than a domed top, and was not designed to recycle hard–to–crush materials as was Patent 694. Since the Smith machine and Patent 694 are not the same, Patent 694 was not in public use more than one year prior to the date of application for the patent. Improvements made in the Smith machine were completed less than one year before the application for Patent 694 and are, therefore, irrelevant for purposes of § 102(b).

■ A patent is valid under the § 103 test for obviousness if the difference between the subject matter sought to be patented and the prior art is such that a person of ordinary skill in the art would not consider the new features of the patent in question to be an obvious outgrowth of previous inventions. This standard requires inquiry into three areas—the scope and content of prior art, the differences between the patent in suit and prior art, and the usual level of skill possessed by the ordinary artisan. *Graham v. John Deere Company*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–694, 15 L.Ed.2d 545 (1966), *Woodstream Corporation v. Herter's Inc.*, 446 F.2d 1143, 1149 (8th Cir. 1971). In *Woodstream Corporation*, supra, 1156, the Court said: "In retrospect, many creative developments seem commonplace. The critical question under *Graham* is whether at the time of the in-

vention the subject would have been obvious to one skilled in the art."

Williams designed, and in 1965, sold to Luria Brothers, Inc., the first machine capable of crushing automobiles and other large, bulky items. The machine's breaker plates split and its flat top was destroyed by the shredding process. Williams attempted to correct the problem by installing solid manganese bars, but to no avail. Patent 694 was designed to solve the problems encountered by the Luria machine. A domed top was used to redirect hard-to-crush material into the rotating hammers and to increase the longevity of the machine. Breaker bars were adjustable in order to direct the material in the desired path. A hydraulic system was used as a shock absorber and shims were used to limit the inward movement of the breaker bars. The effect of the combination is greater than the sum of its parts, a machine which can crush hard, heavy objects without the aid of an outside recycling device or the inconvenience of a tramp metal throw-out trap and which is sturdier than its predecessors. Due to the complexity of Patent 694, its large number of parts, and the numerous possibilities which have been tried and patented in the last sixty-five years, the Court finds that the prior patents, or any combination thereof, would not have led one skilled in the art logically and obviously to Patent 694, but that it took the intervention of Williams' originality and creativity to design Patent 694.

■ The Court concludes that Patent 694 is valid under 35 U.S.C. §§ 101, 102 and 103.

■ Infringement under 35 U.S.C. § 271 is determined by the substantial equivalence test. The court in *Farmhand, Inc. v. Craven*, 455 F.2d 609, 611 (8th Cir. 1972), stated:

"Applying the equivalency test in this circuit entails making the determination that, ' "the infringing device must be substantially identical with the one alleged to be infringed in (1) the result attained; (2) the means of attaining that result; and (3) the manner in which its different parts operate and cooperate to produce that result." ' ". (Citations omitted.)

Professor John C. Georgian of Washington University, St. Louis, Missouri, testified that both Patent 694 and the Gruendler machine have high hoppers for accepting bulky material, both avoid the destructive effect of having material flung up by the hammers striking a flat top at a ninety-degree angle, both have breaker bars on either side of the rotor hammers for directing the path of material, and both tops were designed to reduce the high speed of material thrown into the stack by the hammers and to redirect such material back to the hammers.

Guy DeMarco, an employee of Metal Forum, Inc., who has worked on jobs for both plaintiff and defendants, testified that the two machines had a striking and almost complete resemblance.

In addition, plaintiff chose to bid on a type of shredder that was specified as being manufactured by defendants. That the Gruendler machine had a trapazoidal top instead of a dome and differently shaped breaker bars is not controlling. The trapazoidal top and breaker bars of the Gruendler machine obtain the same result by the same means as Patent 694. The Gruendler machine does infringe upon Patent 694.

■ In Count II, plaintiff contends that defendants violated the Sherman Act, 15 U.S.C. §§ 1 and 2, by securing a monopoly in restraint of trade through fraud on the Patent Office, without which the patent would not have been granted, and by charging plaintiff and its customer with infringement. By these means it is claimed that defendants prevented plaintiff from freely competing with defendants and damaged its business by procuring a patent monopoly which should never have been granted. Charges of unlawful monopolizing and restraint of trade under the Sherman Act must be supported by proof that the defendants, (1) possessed monopoly power in the relevant interstate market, and (2) maintained that monopoly power willfully. *Morton Buildings of Nebraska, Inc. v. Morton Buildings, Inc.*, 531 F.2d 910, 918 (8th

Cir. 1976). There is no evidence to show the relevant market or a monopoly power exercised by the defendants. The presumption of validity of Patent 694 was sufficient grounds for defendants to have served infringement notice, and such action by defendants does not come into conflict with the antitrust laws. 35 U.S.C. 271(d) states: "No patent owner otherwise entitled to relief for infringement * * * shall be denied relief or be deemed guilty of misuse or illegal extension of the patent right by reason of having * * * (3) sought to enforce his patent rights against infringement * * *."

■ Count III alleges that Williams obtained Patent 694 by misleading and withholding information from the Patent Office. There is no showing that Williams intentionally failed to cite pertinent prior art and the Court finds that the most pertinent art introduced into evidence by plaintiff is no better than the prior art cited to the Patent Office when Williams applied for Patent 694.

The defendant Williams Company is entitled to a judgment on its counterclaim that Patent 694 is valid and is entitled to an injunction against the plaintiff from continued infringement of said Patent 694.

Accordingly, judgment will be entered for defendants and against plaintiff on Counts I, II and III of plaintiff's amended complaint, and judgment will be entered for defendant Williams Company and against the plaintiff on defendant's counterclaim holding that Patent 694 is valid and that plaintiff's machine infringes Patent 694, and that defendant Williams Company is entitled to an injunction ordering plaintiff to cease infringement on said Patent 694.

This memorandum opinion is adopted by the Court as its findings of fact and conclusions of law and the clerk of the Court will prepare and enter the proper order.