Clifford C. WILLIAMS et al., Plaintiffs-Appellants,

v.

V. R. MYERS PUMP AND SUPPLY, INC., Defendant-Appellee.

No. 15552.

United States Court of Appeals Seventh Circuit.

Dec. 12, 1966.

Eugene C. Knoblock, South Bend, Ind., for appellants.

Robert G. Irish, Hood, Gust & Irish, Fort Wayne, Ind., Morton S. Adler, Des Moines, Iowa, for defendant-appellee.

Before SWYGERT, FAIRCHILD and CUMMINGS, Circuit Judges.

FAIRCHILD, Circuit Judge.

*Action for patent infringement.* The district court decided that the patent in suit is valid, but not infringed by the accused device, and gave judgment dismissing the complaint. Plaintiffs appealed challenging the finding on the issue of infringement, and attempting to limit the appeal to that issue just as if the judgment were, in form, a declaration upon the two issues, so that the appeal could be taken from only the part of the judgment making a declaration of noninfringement. Defendant has renewed, in this court, its challenge to validity, pointing out that since the judgment was for dismissal a determination of invalidity here would support it even if we deemed the finding of noninfringement clearly erroneous.

The patent in suit, No. 2,968,256, was issued January 17, 1961 to plaintiff Clifford C. Williams for a pump adapter. The other plaintiff is his licensee.

The accused device, sold by defendant, is the Merrill Pitless Adapter.

In constructing a well it appears to be desirable to lower a pipe, with a submersible motor pump or other device attached to its lower end, through the well casing, and then to be able to fix in position, within the casing, the fitting on the upper end of the pipe so that it is connected with an outlet pipe at some level below the frost line, the casing itself extending upward to above ground level. The device by which this fitting is positioned is termed the adapter. The discharge pipe runs from the outlet in the casing to the building where the water is needed.

Speaking very generally, both the patented and the accused devices have in common the use of a wedging action produced by the turning of a nut on a bolt, effected from ground level, to spread the parts of the device laterally within the casing at the desired level, so that the orifice of the channel within the adapter will be held tightly against the outlet in the casing, with sufficient force that the adapter will support the pipe and other equipment suspended from it. Unlike other adapters, neither of these devices requires support from a ledge, shelf, ring, or similar structure within and part of the casing and constricting the passage through it. The advantage of avoiding reliance upon such a structure is that when it is absent, a pump of almost the same diameter as the casing can be lowered into the well, or withdrawn for repair when necessary.

The gist of defendant's argument appears to be:

(1) That the patent claims in suit are not materially different from prior art (other patented adapters or wedging devices used in patented valves in hydrants) or that any differences would have been obvious;

(2) That the claims of the patent, if valid, must be narrowly construed and hence are not broad enough to cover the arrangement by which wedging action is produced in the accused device.

### Validity

"A patent shall be presumed valid."[1] Defendant offers three points indicated below, in an effort to establish invalidity. The district court concluded defendant had not overcome the presumption, and we agree.

(1) An earlier Williams patent (No. 2,529,062) covering a pitless adapter was not cited as a reference.

The district court pointed out a number of important differences in structure and usefulness between the earlier Williams patent and the patent in suit. The device disclosed by the earlier patent is one of a type, already referred to, where the adapter, when in place, is supported by a structure which is part of the casing and constricts passage through it. The earlier patent does not include the concept of a two-part adapter which is expanded laterally by wedging action so as to be held in place and to support the pipe and pump beneath. We consider the devices disclosed as essentially different, and that the latter was not an obvious development from the earlier.

Although it is possible to analyze the earlier device so as to discern within it wedging action which presses an "adapter" laterally into engagement with the casing and the outlet passage, we consider it a strained construction of claim 7 of the patent in suit, out of context, to say that it "reads directly upon the prior Williams adapter," as defendant urges.

Defendant did not plead that the patent in suit was procured by fraud, but has argued that Williams committed fraud by failing to call the earlier patent to the attention of the patent office. If the issue is open for consideration, notwithstanding the lack of pleading, we do not find clear and convincing evidence of fraud in these circumstances.

1. 35 U.S.C.A. § 282.

(2) Among the references cited was the 1959 Hall patent, No. 2,903,067. Defendant asserts that if the patent in suit be construed as contended for by plaintiffs, so as to be infringed by the accused device, the claims in issue are anticipated by Hall. In view of our conclusion that the patent has not been infringed, it is unnecessary to discuss this argument.

(3) Defendant asserts that the subject matter of the claims in issue would have been obvious to a person having ordinary skill in the art, by reason of disclosures in the Hall patent, above referred to, and four patents for hydrants.[2]

■ As noted by the district court, with reference to Hall and other prior patents cited as references, "The presumption of validity of a patent is greatly strengthened when the principal art relied upon has been considered and rejected by the Patent Office." [3]

■ The learned district judge aptly disposed of the argument based on other patents, as follows:

"The other patents cited by the defendant, relating to hydrants and gate valves, are not persuasive. They seem confined to a non-analogous art because each requires housings of special contour and configuration as distinguished from plain tubular well casings. They require that the housing parts be sealed from the gate member extending across the path of flow for the purpose of closing flow rather than for the purpose of establishing flow as in a well adapter. Gate valves do not include two-part constructions which are expanded transversely in a pipe in response to longitudinal movement of a wedged member to produce lateral movement only. In gate valves and hydrants, nothing is suspended from the gate member, while the pitless adapter requires the expanded two-part unit within the well casing to suspend the weight of the pump, drop pipe and water column in the drop pipe."

### Infringement

As previously stated, the patented and accused devices have in common the use of a wedging action to spread the parts of the device laterally within the casing at the desired level. Both, in that way, press the orifice within the adapter against the outlet in the casing, and press against the wall of the casing with enough force so that the adapter will support the weight of the equipment suspended from it.

The district court found no infringement because of two points of difference between the patented and accused devices. One is concerned with the place at which the wedging action produces pressure against the casing, and the other with the form of the surfaces which interact in the wedging action.

In the accused device, two cylindrical bosses protrude from the sides of the main body of the adapter (that part which contains the channel, the orifice of which is to be pressed against the outlet pipe). What might be termed a jacket, consisting of plates at each side and across the back, surrounds the main body of the adapter on three sides. Each side plate of the jacket contains a diagonal slot which is nearer the front at its upper end and nearer the back at its lower end, and the bosses protrude into this slot. When downward pressure is applied to the jacket and it is thus lowered relative to the main body of the adapter, the rear edges of the side plates press against the casing, wedging action occurs, and the orifice of the adapter is pressed against the outlet pipe. When the jacket is raised relative to the main body of the adapter, the orifice is withdrawn from the outlet pipe.

2. Ward, No. 224,061, 1880; Coffin, No. 330,377, 1885; Snow, No. 958,021, 1910; and Trefil, No. 2,614,792, 1946.

3. Hunt v. Armour & Co. (7th Cir. 1950), 185 F.2d 722, 726, citing Lewyt Corp. v. Health-Mor, Inc. et al. (7th Cir. 1950), 181 F.2d 855, cert. denied (1950), 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605.

The critical portion in claim 7, in suit (and, as a result, in dependent claims 8 and 10), is as follows:

"* * * wedge means bearing against said casing substantially diametrically opposite said outlet and having an inclined surface, said adapter having an inclined surface portion engaged by and coacting with the inclined surface of said wedge means * * *."

The corresponding portion of claim 12, in suit, reads:

"* * * wedge means movably mounted for longitudinal movement in said casing substantially diametrically opposite said outlet and having an inclined surface, means carried by said adapter having an inclined surface portion for co-acting with the inclined surface of said wedge means * * *."

Because in the accused device the wedge means bears upon the casing at the rear edge of its side plates (and such side plates are outside the adapter body, and sidewards from the outlet), and because inclined surfaces (the edges of the slots) interact with cylindrical bosses rather than with other inclined surfaces, the district court found:

"* * * The accused adapter does not have wedge means positioned or bearing against the casing substantially diametrically opposite the discharge outlet, nor does the adapter body of the accused device have an inclined surface portion which engages and/or co-acts with an inclined surface on movable wedge means."

The learned district judge correctly placed reliance upon the doctrine of file wrapper estoppel,[4] and concluded that:

"A fair reading of the file wrapper in regard to the patent in suit so restricts the scope of the claims in issue that they are not infringed by the accused device * * *."

The file wrapper shows rejection of plaintiff Williams' original claims because of certain prior patents (including Hall, referred to above) and his insertion, by amendment, in order to overcome these and similar objections, of the precise definition of the area at which pressure would be applied to the wall of the casing, "substantially diametrically opposite said outlet," and of the configuration of the interacting surfaces, "an inclined surface portion engaged by, and co-acting with the inclined surface of said wedge means * * *." In order to achieve a patent Williams found it necessary to restrict his claim in these particulars so as to disclaim in effect, the arrangements appearing in the accused device.

Although the patent is valid, it has not been infringed, and the judgment is

Affirmed.

---

4. "* * * a patentee who has changed the form of his claim during its prosecution disclaims the scope of the claim in its earlier form, and the change effected by the amendment must be construed against the patentee. He is not permitted thereafter to recapture what he has disclaimed or assert the claim against any equivalents that would respond to the claim in its earlier form but which do not respond expressly to the claim as issued." Dixie Cup Co. v. Paper Container Mfg. Co. (7th Cir. 1948), 169 F.2d 645, 648; Exhibit Supply Co. v. Ace Patents Corp. (1942), 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736.