Charles S. WHITE and American Metal
Products Company, Plaintiffs-
Appellees,

v.

The FAFNIR BEARING COMPANY,
Defendant-Appellant.

No. 95, Docket 31197.

United States Court of Appeals
Second Circuit.

Argued Oct. 11, 1967.

Decided Feb. 9, 1968.

William K. Kerr, of Fish, Richardson & Neave, New York City (Albert E. Fey, New York City, and Murtha, Cullina, Richter & Pinney, Hartford, Conn., on the brief), for plaintiffs-appellees.

Roy C. Hopgood, New York City (Eugene J. Kalil, Paul H. Blaustein, and Hopgood & Calimafde, New York City, on the brief), for defendant-appellant.

5. See Townsend v. Sain, 372 U.S. 293, 316, 83 S.Ct. 745, 9 L.Ed.2d 770.

Before LUMBARD, Chief Judge, and SMITH and FEINBERG, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal under 28 U.S.C. § 1292(a) (4) from a judgment of the United States District Court for the District of Connecticut, T. Emmet Clarie, Judge, reported at 263 F.Supp. 788 (1966), in a patent infringement action, holding claims 3, 4 and 5 of U. S. Patent No. 2,885,248 [1] for molded bearing having low friction mating surfaces, and claims 1, 5 and 9 of Reissue Patent No. Re 24,765 [2] for low friction fabric ma-

1. 3. A bearing having a metal body with a face of hardenable material thereon, and Teflon threads woven into a cloth, the protruding portions of the rear face of the Teflon threads being embedded in the hardenable material which extends into the interstices between the weave of the threads to mechanically anchor the cloth to the body, substantially all of the front face of the threads being disposed above the hardenable material to provide the low friction surface for said bearing.

4. A bearing element having a face of hardenable material, and Teflon threads interrelated to form a cloth-like element, the protruding portions of the rear face of the Teflon threads being embedded in the hardenable material which extends into the interstices between the threads to mechanically anchor the cloth-like element to the hardenable material, substantially all of the front face of the threads and cloth-like element being disposed above the hardenable material to provide the low friction surface for said bearing element.

5. A composite bearing material of strip form having one surface formed of hardenable material and the other surface formed of low friction Teflon threads interrelated to form a cloth-like element, the protruding portions of the rear face of the Teflon threads being embedded in the hardenable material which extends into the interstices between the threads to mechanically anchor the cloth-like element to the hardenable material, substantially all of the front face of the threads being disposed above the hardenable material to provide the low friction surface for said composite bearing material.

2. 1. A compound woven fabric *antifriction bearing element* having threads of two different materials, the material of one thread having the properties of being bondable to a material of *a bearing member* for the purpose of retaining and positioning the other thread, the material of which *other thread is tetrafluoroethylene resin which* has low friction characteristics but which is not readily bondable to [other materials] *the ma-*

*terial of the member,* the threads being so interwoven as to have those of [low friction characteristics] *tetrafluoroethylene resin* disposed substantially on one face of the fabric *to form the low friction bearing engaging surface for the member* and the threads having the bonding characteristics disposed on the opposite face thereof whereby the bonding threads may be secured in position in a manner which does not substantially affect the low friction properties of the *tetrafluoroethylene resin* [other] threads which are securely anchored in place by the intertwining portions of the bondable threads after the latter are secured in position *to have the tetrafluoroethylene resin threads form the bearing surface.*

5. *A bearing comprising a backing member having a fabric material secured thereto to provide the working face thereof, said fabric material comprising a compound woven fabric having threads of two different materials, the material of one thread having the properties of being bondable to the backing member, the material of the other thread being a polymeric fluorocarbon resin, the threads being so interwoven as to have those of the polymeric fluorocarbon resin disposed substantially on one face of the fabric and the threads having the bondable characteristics disposed on the opposite face thereof, said bondable threads being bonded to the backing member to securely anchor the threads of the polymeric fluorocarbon resin in place as the low friction working face of the bearing.*

9. *A compound woven fabric antifriction bearing element having threads of two different materials, the material of one thread having the properties of being bondable to a material of a bearing member for the purpose of retaining and positioning the other thread, the material of which other thread is a polymeric fluorocarbon resin which has low friction characteristics but which is not readily bondable to the material of the member, the threads being so interwoven as to have those of polymeric fluorocarbon disposed substantially on*

terial valid and infringed, and dismissing counterclaim for declaration of non-infringement, invalidity and anticipation. Essentially for the reasons set out in Judge Clarie's thorough opinion, we affirm the judgment.

The claims in suit relate to the low friction bearing art as it has developed largely in its application to aircraft, rocket and automotive construction. Prior to the developments in suit, metal on metal bearings were commonly used, and there had also been developed bearings in which, rather than metal on metal, metal on a heat cured phenolic resin was used, the phenolic resin face being cured in place against the metal bearing member—as a steel ball in a ball and socket bearing—to provide an accurate mating. Such plastic members were sometimes strengthened by incorporation in the resin during the curing process of macerated cotton fabric or several sandwich-like layers of such fabric. These bearings, as in metal on metal, typically required a lubricating film of oil, grease or similar lubricant and channels, holes or like interruptions in one surface to provide for supply of the lubricant.

White, seeking improvement of ball-joint automotive chassis bearings, sought to incorporate materials of inherent lubricity such as Teflon, a tetrafluoroethylene resin, a product of DuPont, on the phenolic resin face of the bearing to eliminate the need for separate lubricants. Teflon had the requisite slipperiness or lubricity, but if applied in block or sheet form to the surface of the phenolic resin face it had two fatal drawbacks, inability to get a satisfactory bond to the phenolic resin and a propensity to deform or cold flow when put under pressure.

White, coming upon a Teflon cloth used in filters, conceived the idea of using it as a bearing surface which could be bonded to the resin. Teflon in thread or filament form has a tensile strength some 25 times greater than when in sheet form. This idea of White's proved successful, when a fairly closely woven cloth was used, although trials of a loosely woven mesh proved a failure. The resin cured under heat penetrated the interstices of the Teflon cloth, and gave a usable bond, and when excess resin was vapor-blasted from the surface the Teflon threads gave a dry self-lubricating bearing surface. This was the basis for a patent application filed June 16, 1955, which issued as the patent in suit 2,885,248 on May 5, 1959.

Further development by White enabled him to eliminate the need for vapor-blasting excess resin from the surface and at the same time improve the bonding characteristics by using a compound woven cloth, with one surface of Teflon or similar thread, the other of cotton or other non-slippery thread which would form a firmer bond in the resin than Teflon thread itself. For applications where high heat or corrosive liquids could be expected, the backing was made of threads of fibre-glass or similar material. This was the basis for a patent application on November 4, 1955, which issued on September 3, 1957 as No. 2,804,886, and was the basis of Reissue Patent No. Re 24,765 granted January 12, 1960 in suit.

During the period of White's developments and for some time prior thereto there had become apparent a need for a major improvement in the bearing art to meet the requirements of the aircraft industry for use with the supersonic planes in contemplation, as well as the desired advances in automotive perform-

*one face of the fabric to form the low friction bearing engaging surface for the member and the threads having the bonding characteristics disposed on the opposite face thereof whereby the bonding threads may be secured in position in a manner which does not substantially affect the low friction prop-*

*erties of the polymeric fluorocarbon resin threads which are securely anchored in place by the intertwining portions of the bondable threads after the latter are secured in position to have the polymeric fluorocarbon resin threads form the bearing surface.*

ance. The Navy's Bureau of Aeronautics in 1952 instituted a program, renewed in 1954, with all the principal bearing manufacturers to design a so-called superseries of bearings for aircraft use. The manufacturers, including Fafnir, made intensive efforts to design bearings to meet the stiff new aircraft specifications, but the bearings, including Fafnir's newest steel on steel bearings, failed to meet the tests.

White's Teflon faced phenolic resin bearings were made and sold by his employer and licensee, Micromatic Hone, beginning in the Fall of 1956. They proved to be of aircraft quality, and Boeing found them to be 800% better than any bearings previously tested.

Fafnir and others eventually turned to White's Teflon lined bearings to meet their customers' specifications. Fafnir's bearings with compound woven Teflon cloth, which copied the bearings of the reissue patent in suit, were first successfully sold on an experimental basis in October 1960. At least one other manufacturer succeeded in producing aircraft quality bearings using all Teflon cloth as the bearing surface of the liner.

The principal questions are whether the claims in suit were taught by other patents in the bearing field, particularly Hooper patent No. 1,964,202 and British 698,611, that is, whether the claims were anticipated, and even if not directly anticipated whether in the light of the teaching of those patents and other prior art, the claims are invalid for obviousness under 35 U.S.C. § 103,[3] whether the claims of the '248 patent were infringed (it being conceded that if the Reissue patent was valid, Fafnir infringed), whether the Reissue patent is invalid as claiming a different invention from the parent patent, and whether the patents in suit are invalid for failure to disclose

a critical relationship necessary to the practice of the invention.

The use in the bearing art of materials having inherent lubricity characteristics in one bearing face was known in the art. Hooper and others used a thread, not itself of high lubricity, but impregnated with a lubricant such as graphite. Block and sheet Teflon were unsuccessfully tried by White, but cold flowed under high pressure. Teflon thread, with tensile strength 25 times that of the sheet or block form resisted cold flow. Smith, in patent No. 2,919,219, used Teflon fabric, but imbedded the fibers in the resin, perhaps strengthening the resin, but exposing only the ends of the fibers, less than 2% of the bearing surface. White first successfully exposed the Teflon fabric at the surface to give a high enough surface proportion for effective self-lubrication. British patent 698,611 did use a slippery thread, polythene, in a bearing construction, but even in its closest form to White the cloth at the bearing face is only partly polythene and partly non-slippery threads, the polythene, whether in filament or other form being incorporated in the resin block so that the block will be composed of a percentage of polythene or other lubricating material. White in both patents in suit presents cloth solely of Teflon or similarly lubricious threads at the bearing face.

In the British '611 patent, lubricity is obtained either by impregnating threads of other material with polythene, graphite or other lubricant, or interspersing threads of polythene or similar material with threads of non-slippery substance in a matrix of resin. It does not reveal White's solution of the problem, which presented a bearing face primarily made up of Teflon filaments, either directly bonded to the resin, elim-

---

3. 35 U.S.C. § 103 reads:

"A patent may not be obtained though the invent. n is not identically disclosed or describe l as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the sub- ject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

inating the cold flow of Teflon sheet, or, in the improved form of the Reissue Patent, with a bondable backing, combining the lubricity, heat resistance, tensile strength and resistance to cold flow of the Teflon cloth with the bondable qualities of the glass fibre, cotton or other thread of the reverse side of the weave.

The parties are, of course, in agreement that the obviousness test of section 103 must be applied in the light of Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) and United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966), but appellant contends that so applied, a finding of invalidity because of obviousness should have resulted. We think the Court properly applied the test.

Judge Clarie has analysed the scope and content of the prior art, the difference between the prior art and the claims in suit, and the level of ordinary skill in the pertinent art. He has also properly canvassed the secondary considerations of the commercial success of White's development, the long felt but unsolved needs of the industry, particularly the great pressure of the military for the meeting of the "super-series" bearing requirements, and the failure of others, including Fafnir, to solve the problem in spite of intensive efforts and demands from their sales departments until they were able to copy White's development.

■ Appellant has shown earlier uses of fabric in the construction of molded bearings, of incorporation of low friction substances in attempts to provide self-lubricating bearings and various uses of compound fabrics. White's development, however, is a sufficient, and sufficiently non-obvious advance over what was available to the industry in these earlier teachings to merit protection under the patent laws. We weigh questions in this technical field with some trepidation, mindful of Judge Learned Hand's remark that "To judge on our own that this or that new assemblage of old factors was, or was not,

'obvious' is to substitute our ignorance for the acquaintance with the subject of those who were familiar with it." Reiner v. I. Leon Co., 2 Cir. 1960, 285 F.2d 501, 504. But judge it we must, and we are persuaded that the district court and the patent office properly held these claims non-obvious and patentable.

White's recognition of the possibility of utilizing the tensile strength of Teflon in thread or filament form, in a close enough weave to present a substantial proportion of slippery surface, with the phenolic resin cured into the interstices in the cloth so as to anchor the cloth and prevent cold flow, was necessary to make practically available the recognized lubricity characteristics of the Teflon or similar substances for use in the bearing art. This filled a long felt need, particularly in the critical field of highload bearings, and met the constitutional standard of innovation, advancement and addition to the sum of useful knowledge essential to the grant of patent monopoly. See Graham v. John Deere Co., supra, 383 U.S. at p. 6, 86 S.Ct. 684.

■ Appellant contends that the Reissue patent is invalid because directed to a different invention from that covered in the parent '886 patent. We do not agree.

■ On January 19, 1959, White applied for reissue of the patent concerning the use of compound cloth. The purpose of the application was to eliminate the possibility that the patent would be held invalid as too broad since it might be construed to cover all compound cloth per se. The reissue limited this patent to use of compound cloth in a bearing to bind the Teflon fibers in the cloth in the proper position. The application was filed well within the statutory two-year limitations period. The delay was not so unreasonable as to support Fafnir's claim of laches. Nor had Fafnir materially changed its position in reliance on any inadequacy in the disclosures of the parent patent. The purpose of the reissue patent provision is to permit an inventor to correct a

mistake when his patent application covers more than the true invention. Fafnir's contention that the reissue covers a different invention in that the original patent covered cloth and the reissue covers bearings is without merit. Both cover the use of compound cloth to position and anchor Teflon wear surfaces on bearings. The original patent put everyone on notice of that claim[4] and the reissue made certain that the claim was not too broadly construed as including the cloth itself. Since this was not a new claim, Fafnir's contention that the late claim doctrine applies is also without merit.

Appellant also contends that the patents in suit are invalid for failure to disclose or claim a critical relationship found to be necessary to the practice of the inventions. This contention, however, seems to us to be based on a misconception of what Judge Clarie held. In the discussion at pp. 803–804 of 263 F.Supp., the court does refer to White's background in the so-called Teetor theory of a relationship between bearing surface and lubricant surface exposure, which White found workable at 30–40% Teflon to 70–60% phenolic surface. But this relationship was not claimed and is not found to be essential to the practice of the teachings of the patent. Indeed, White's testimony, Tr. 831–833, 838, demonstrates that he was not sure what ratio he actually obtained, but knew it varied, and was guessing at the figures. Moreover, while the language of the opinion at this point would seem to imply that at least some resin is always found at the surface, there is no finding that any particular proportion is or must be so found, and the testimony of Thomas, Tr. 374–5, of the practice with the compound cloth of the Reissue patent would seem to negate any implication of any particular proportion of resin at the surface.

Fafnir has made and submitted to its customers, bearings lined with all Teflon cloth as well as the compound cloth similar to plaintiffs' Fabroid bearings, the compound cloth bearings proving successful. The court properly found that Fafnir infringed the claims in suit both of the '248 patent and the Reissue patent No. Re 24,765.

The judgment is affirmed.

---

4. " * * * it is fundamental that claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention, * * * " United States v. Adams, supra, 383 U.S. 39, 49, 86 S.Ct. 708. See also McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d 381, 389 (10 Cir.), cert. denied 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851 (1966).